UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| T.W., | ) | No. CV-07-371-LRS |
|             Plaintiff, | ) | |
| vs. | ) | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| SPOKANE COUNTY and OZZIE D. KNEZOVICH, | ) | |
|             Defendants. | ) | |

**BEFORE THE COURT** is the Defendants' Motion To Dismiss (Ct. Rec. 18) which the court will treat as a motion for summary judgment under Fed. R. Civ. P. 56 because of the consideration of matters outside the pleadings, specifically the parties' "Stipulated Facts" (Ct. Rec. 24). Fed. R. Civ. P. 12(d).

Oral argument was heard on the motion on March 4, 2009. Richard D. Wall, Esq., argued on behalf of Plaintiff. Steven J. Kinn, Esq., argued on behalf of Defendants.

**I. BACKGROUND**

Effective September 1, 2006, Washington's sex offender registration statute, RCW 9A.44.130, was amended. Pursuant to that amendment, RCW 9A.44.130(7) requires that:

> All offenders who are required to register pursuant to this section who have a fixed residence and who are designated as a risk level II or III must report, in person, every ninety

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-    1**

> days to the sheriff of the county where he or she is registered. Reporting shall be on a day specified by the county sheriff's office and shall occur during normal business hours. An offender who complies with the ninety-day reporting requirement with no violations for a period of at least five years in the community may petition the superior court to be relieved of the duty to report every ninety days. . . . Failure to report, as specified, constitutes a violation of this section and is punishable as provided in subsection (11) of this section.[1]

Plaintiff is a Level II Offender who was released to the community in 2003, at which time he became subject to Washington's sex offender registration statute. He alleges that RCW 9A.44.130(7) violates the *Ex Post Facto* Clause of the U.S. Constitution. Art. 1, §10. This is a facial constitutional challenge in that Plaintiff asserts that no set of circumstances exist under RCW 9A.44.130(7) that would be valid under the *Ex Post Facto* Clause as to any offender already subject to the registration requirements of RCW 9A.44.130 prior to the 2006 amendment which brought about subsection (7). *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095 (1987). Plaintiff seeks declaratory and injunctive relief.[2]

## II. DISCUSSION

### A. Summary Judgment Standard

---

[1] A person who knowingly fails to comply with any of the requirements of RCW 9A.44.130 is guilty of a Class C Felony if the crime for which the individual was convicted was a felony sex offense. If not a felony sex offense, then failure to comply is a gross misdemeanor. RCW 9A.44.130(11).

[2] Plaintiff's Amended Complaint pleads a procedural due process claim, but at oral argument, Plaintiffs' counsel indicated this claim would not be pursued.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-    2**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

**B.** *Ex Post Facto*

Plaintiff contends the requirement to report to the sheriff's office in person once

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-  3**

every 90 days significantly restricts his freedom of movement "and is, therefore, primarily punitive in its effect and purpose."[3] The *Ex Post Facto* Clause prohibits States from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960 (1981).

An "intent-effects" test is used to determine whether a state law violates the *Ex Post Facto* Clause. First, it must be determined whether the state legislature intended its statute to establish "civil proceedings," or if its intention was to impose punishment. If the latter, that ends the inquiry and there is a violation of the *Ex Post Facto* Clause. *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 140 (2003). If, however, the legislative intent was to enact a regulatory scheme that is civil and non-punitive, the statutory scheme must be further examined to determine whether it is "so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Id*.

In *Russell v. Gregoire*, 124 F.3d 1079 (9th Cir. 1997), the Ninth Circuit Court

---

[3] While RCW 9A.44.130 is silent as to what is to occur during the in-person reporting of an offender, the parties here have stipulated that the process includes providing written information on a form provided by the sheriff's department, including name, address, social security number, place of employment, vehicle description, vehicle license plate number, and driver's license number. The person is periodically required to pose for photographs, including left and right profiles, and a frontal view. The process takes from 15 minutes to 1 hour. (Paragraph XX of Stipulated Facts).

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-    4**

of Appeals held that Washington's legislature intended the sex offender registration statute, RCW 9A.44.130, to be civil and non-punitive. The circuit agreed with the Washington Supreme Court that the legislature had an unequivocal regulatory motivation in requiring the registration of sex offenders. *Id*. at 1087, citing *State v. Ward*, 123 Wn.2d 488, 869 P.2d 1062, 1068 (1994). Said the circuit in *Russell*: "The overall design of the statute's registration provisions indicates a regulatory, not punitive, intent. Registration does no more than apprise law enforcement officials of certain basic information about an offender living in the area. It places no restriction on the offender's movements . . . ."

Although *Russell* was decided before the 2006 amendment that resulted in RCW 9A.44.130(7), Plaintiff does not argue that 9A.44.130(7) evinces legislative intent to punish as opposed to regulate. Instead, Plaintiff's focus is on the "effects" part of the test. That part of the test (the second part) asks whether Plaintiff has provided "the clearest proof" that the sanction is "so punitive" in effect that it overcomes the non-punitive legislative intent. *Russell*, 124 F.3d at 1088.

In analyzing the "effects" of a statute, there are certain relevant factors for the court to consider. These factors, identified in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S.Ct. 554 (1963), include whether the state's regulatory scheme, in its necessary operation, has historically been regarded as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a non-punitive purpose; or is excessive with respect to this purpose. *Smith*, 538 U.S. at 97. Based on consideration of the *Mendoza-Martinez* factors, the Ninth Circuit, in *Russell*, found that sex offender registration does not have a punitive effect because: "no affirmative restraint or disability is imposed; registration is typically and historically a regulatory measure; it does not have a retributive purpose but does have legitimate non-punitive purposes; and it is not

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-   5**

Here, Plaintiff seeks to distinguish *Russell*, asserting that prior to 2006, RCW 9A.44.130 did not impose any periodic requirement to appear in person at the sheriff's office once the offender had registered. In *Russell*, the Ninth Circuit commented that registration placed no restraint on the movement of an offender because he "need only notify the sheriff of any change of address 14 days before moving, or, if not within 14 days, as soon as the new address is known and "he . . . may do so by simply mailing a written notice to the sheriff." 124 F.3d at 1087, citing RCW 9A.44.130(4) (the version that existed in 1996).

Likewise in *Ward*, the Washington Supreme Court, in finding that Washington's sex offender registration scheme (as it existed in 1994) did not have a punitive "effect," noted that registration did not overly burden or restrain offenders because it required only that they provide limited information to law enforcement and did not significantly limit their movements. "Sex offenders are free to move within their community or from one community to another, provided they comply with the statute's registration requirements." 123 Wn.2d at 501.

Plaintiff also notes that in *Smith v. Doe*, the U.S. Supreme Court, in declaring that Alaska's Sex Offender Registration Act was non-punitive and that retroactive application of the same did not violate the *Ex Post Facto* Clause, pointed out that the Act did not require an offender to appear in person to update his registration. 538 U.S. at 101. Plaintiff concedes, however, that the Supreme Court did not say whether the presence of such a requirement would have made any difference in its decision. The Supreme Court merely pointed out that the Ninth Circuit Court of Appeals, in concluding that the requirement of periodic updates imposed an affirmative disability, had misapprehended that the offender was required to update the registry in person. *Id*. The Supreme Court reversed the Ninth Circuit's finding that the effects of the Act

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT-    6**

were punitive despite the state legislature's intent. The Supreme Court noted that the Act imposed "no physical restraint" and thus, did not resemble the punishment of imprisonment, "which is the paradigmatic affirmative disability or restraint." *Id*. at 100. According to the Court: "The Act does not restrain activities sex offenders may pursue **but leaves them free to change jobs or residences**." *Id*. (emphasis added).

The question here whether the fact an offender in Washington now has to appear in person at the sheriff's office every 90 days to update his registration, "physically restrains" him or otherwise limits his freedom of movement to such an extent that the requirement is punitive in effect and overcomes the non-punitive legislative intent behind it. Plaintiff contends the "requirement to appear in person at a place and time of another's choosing under penalty of criminal sanction is a significant restriction on a person's freedom of movement" as it "affirmatively requires the person to be physically present at a place where he or she may not wish to be at a time when he or she may wish to be somewhere else."[4] Plaintiff asserts this

---

[4] The fact there is a criminal penalty for failure to register does not make the registration requirement "punitive" and Plaintiff does not argue to the contrary. "It is hornbook law no *ex post facto* problem occurs when the legislature creates a new offense that includes a prior conviction as an element of the offense, as long as the other relevant conduct took place after the law was passed." The crime of failing to register is a separate offense and the fact that a prior conviction for sexual misconduct is an element of the failure to register offense is of no consequence. *Russell*, 124 F.3d at 1088-89.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-    7**

is "incarceration by compulsion" which is no different than incarceration by actual physical restraint.

Plaintiff argues there is no need to have a registrant appear in person to update his information because this can be done by mail, phone or other means. Although this updating certainly can be done by other means, there is no question in the court's mind that a periodic in-person reporting requirement for Level II and III offenders enhances the verification process and is more likely to confirm the continued presence in the county of such offenders who claim to have a fixed residence in the county. While the periodic in-person reporting requirement does not guarantee that the offender will provide accurate information about his current residence, it is reasonably more likely to impress upon the offender the importance of providing accurate information than if he or she were simply obliged to mail or phone in that information.

Clearly, an additional legitimate reason for having the registrant appear in person is to obtain an updated photograph of him or her to document any change in appearance (i.e., presence or absence of facial hair). RCW 9A.44.130(9) states that "[t]he county sheriff shall obtain a photograph of the individual and shall obtain a copy of the individual's fingerprints. **A photograph may be taken at any time to update an individual's file**." (Emphasis added). Updated information about an offender, including an updated photograph, is relayed to the public by the sheriff in compliance with the community notification provisions of RCW 4.24.550. The sheriff can also advise the public if an offender is out of compliance with the registration requirements by, for example, having failed to comply with the 90 day in-person reporting requirement.

Plaintiff asserts that even if the taking of an updated photograph is reasonably related to the regulatory purpose of the statute, the manner in which it is accomplished is "more punitive than regulatory because of the significant affirmative disability that

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-    8**

is imposed on the registrant." Plaintiff says that because he is required to appear at the Spokane County Sheriff's office the second week of every third month[5], he cannot travel outside the county during that week or otherwise engage in any activity that would require his presence elsewhere during the normal business hours that week.

Because the Plaintiff only needs to be a the sheriff's office on any day during the designated week, there is nothing that prevents him from being elsewhere (outside the county) during the other days of that week. Plaintiff also says "he could not be employed locally during that week unless his employment was such that he could absent himself from his work long enough . . . to complete the reporting process without interfering with timely completion of his job duties." Although the reporting requirement could potentially cause problems with employment if an employer were not willing to take it into account and make an adjustment, this is only a potential, speculative difficulty which is outweighed by the State's interest in knowing where certain offenders are located so that the community can be advised of the same. Moreover, Plaintiff does not indicate that he is employed and that the requirement has in fact caused insurmountable difficulties with such employment. And finally, as a far as vacations or extended absences from the county are concerned, Plaintiff would simply have to make the proper arrangements so there would be no conflict with his 90 day reporting date.

It is again important to emphasize that what the U.S. Supreme Court (*Smith*), the Ninth Circuit (*Russell*), and the Washington Supreme Court (*Ward*) had in mind in terms of a "punitive," affirmative physical restraint was a requirement that interfered with the individual's ability to change jobs or residences. RCW 9A.44.130(7) does not interfere with that ability. A Level II or III Offender can still

---

[5] Ex. F to Ct. Rec. 24.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-    9**

change jobs or residences, provided that whatever new job he takes, or new residence he obtains, he shows up every 90 days to update his registry information.

In a recent unpublished decision, *State v. Crofton*, 2008 WL 2231821 (June 2, 2008), the Washington Court of Appeals, Div. 1, dealt with an *ex post facto* challenge to RCW 9A.44.130(6), which requires post-release sex offenders who do not have fixed addresses to report weekly, in person, to the sheriff's office in the counties where they are registered.[6] Citing the Washington Supreme Court's decision in *Ward*, the court of appeals concluded RCW 9A.44.130(6) did not violate the *ex post facto* clauses of either the Washington or federal constitutions:

> Here, for the same reasons articulated in *Ward*, Crofton's ex post facto challenge fails because the registration provisions are not punitive. The only difference between Crofton's challenge and that advanced by the defendants in *Ward* is that, because he has no fixed address, he reports once a week to the King County Sheriff's Office to confirm his continued presence in the county. To comply with the statute, Crofton had to go to the sheriff's office and sign his name on a piece of paper. Nothing in the record supports his claim that it was difficult for him to get to the sheriff's office or that doing so hindered his ability to obtain social services and employment. And even if reporting weekly was inconvenient to Crofton, that does not distinguish him from other sex offenders or make the statute punitive. As the *Ward* court concluded, "[a]lthough a registrant may be burdened by registration, such burdens are an incident of the underlying conviction and are not punitive for purposes of ex post facto analysis."

2008 WL 2231821 at *2.

RCW 9A.44.130(7) is significantly less onerous than RCW 9A.44.130(6) since it requires physical in-person reporting only every 90 days, as opposed to weekly in-person reporting. RCW 9A.44.130(7) is also less onerous than the State of New York's 90 day in-person reporting requirement which the Second Circuit Court of

---

[6] Per LR 7.1(g)(2), it is permissible to cite unpublished decisions filed after January 1, 2007.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-    10**

Appeals held did not violate the *Ex Post Facto* Clause. *Doe v. Pataki*, 120 F.3d 1263, 1284-85 (2nd Cir. 1997). New York's provision required that offenders classified as "sexually violent predators" register personally every 90 days for a minimum of ten years and up to life. RCW 9A.44.130(7) permits an offender who complies with the 90 day in-person reporting requirement, and who has no violations for a period of at least five years in the community, to petition the superior court to be relieved of the duty to report. The court is to relieve the offender of the requirement if he shows by a preponderance of the evidence that he has complied with the requirement for a period of at least five years and has not been convicted of a criminal violation of 9A.44.130 for a period of at least five years, and the court determines that the reporting no longer serves a public safety purpose.[7]

### III. CONCLUSION

Based on the undisputed facts, and for the reasons set forth above, the court concludes as a matter of law that the legislative intent behind RCW 9A.44.130(7) is non-punitive and that its effect and purpose is not so punitive as to negate said intent. It does not impose an affirmative disability or restraint, and has a rational connection to a non-punitive purpose (community notification of the most current information as to where convicted Level II and III offenders reside) which is not excessive with respect to that purpose. Thus, it does not violate the *Ex Post Facto* Clause.

---

[7] The parties "Stipulated Facts" (Paragraphs XVI, XVII, XVIII, XIX and Ex. G) indicate that Plaintiff could also petition the sheriff to lower the Plaintiff's offender classification from Level II to Level I. Level I Offenders are not subject to the 90 day in-person reporting requirement.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-    11**

1 | Defendants' motion (Ct. Rec. 18) is **GRANTED** and Defendants are awarded judgment against the Plaintiff on his *ex post facto* claim. Plaintiff's procedural due process claim is **DISMISSED** as moot.

**IT IS SO ORDERED**. The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this 12th day of March, 2009.

        *S/ Lonny R. Suko*
        LONNY R. SUKO
        United States District Judge

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-    12**